IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | Criminal No.  05-363 (RJL) |
| | : | |
| | : | |
| RICHARD SHEDRICK | : | |

## MEMORANDUM IN AID OF SENTENCING

Defendant, Richard Shedrick, through undersigned counsel, respectfully submits the following memorandum in aid of sentencing in support of his request for a probationary sentence.

## ARREST / PROCEDURAL BACKGROUND:

On or about November 29, 2004, officers of the Metropolitan Police Department ("M.P.D.") conducted a traffic stop of a blue 2 door Chevy Cavalier being driven by co-defendant Michael A. Brunner, Jr. on Martin Luther King Boulevard, S.W., in the District of Columbia. The officers smelled the odor of marijuana in the vehicle, and asked Mr. Brunner to exit the vehicle. A pat down search revealed a .380 caliber handgun, which was later test fired to confirm its operability.

Mr. Brunner told the officers that he was living at 151 Joliet Street, S.W. #204, Washington, D.C. Based on the recovery of the gun, the officers then swore out a search warrant for the Joliet Street apartment, seeking authorization to look for gun-related items. On or about December 3, 2004, the officers obtained and executed the search warrant. During the search the police recovered a number of items of contraband and personal paperwork, including a small quantity of white rock substance (approximately 3 grams including the packaging) concealed on top of a kitchen cabinet near the ceiling; a small digital scale in an upper kitchen cabinet; a small plate with white residue, a razor blade, and empty ziplocks from upper kitchen cabinet.

- 2 -

Richard Shedrick, who was approaching the front door of the apartment when the police arrived, and Shalita Isaacs, who was present in the apartment at that time, were both arrested and taken to the Superior Court for the District of Columbia.   The next day, the charges were "no papered" and they were released.  More than two months later, Mr. Brunner, Mr. Shedrick, and Ms. Isaacs,  were indicted in this Court in Case No. 05-057.

Early on, counsel attempted to negotiate a reasonable disposition in the case consistent with the evidence.  Initially, the government was unwilling to negotiate such a disposition, but eventually they re-assessed the case, and agreed to dismiss the charges against Mr. Shedrick if he would agree to plead guilty to an Information charging him with possession with intent to distribute cocaine base in violation of 48  D.C. Code 904.01.  Mr. Shedrick promptly agreed.  On or about November 3, 2005, he entered a guilty plea to the Information in Case No. 05-363.  A pre-sentence report ("PSR") was ordered, and sentencing was scheduled for January 27, 2006.

## DEFENDANT'S HISTORY AND BACKGROUND:

Mr. Shedrick is a 32 year old man with no prior convictions.  He graduated from Eastern High School in the District of Columbia.  Unlike many of the criminal defendants who appear in this court, after high school he was gainfully employed for nearly seven years until injuries and a medical condition caused him to stop working.  He worked as a freight loader at Hecht's for nearly three years.  Thereafter, he worked for a couple years as an plumber's apprentice / helper for John J. Kirlin, a plumbing company in Maryland - a job he left after injuring his wrist.  He then went to work for W.L. Gary Mechanical Company, again as a plumber's apprentice, and  worked there until 2002, when he was diagnosed with sarcoidosis, a medical condition which affects the lungs, lymph nodes, and sinuses, and significantly limited his ability to work.  He was required to go through a lengthy period of medical treatment, including a regimen of steroids.  He gained more than 50 pounds and was unable to return to work.  He had been on medical disability for a couple of years at the time of his arrest in 2004.

- 3 -

While out of work, Mr. Shedrick lost his focus and began smoking marijuana on a regular basis, and began making poor personal decisions. He allowed himself to be controlled by the medical disability, rather than having the strength and commitment to overcome the disability. In that regard, the arrest was the best thing that could have happened to him.

To Mr. Shedrick's credit, after his arrest and release from Superior Court, he immediately recognized the need to straighten out his life. More importantly, he acted on those feelings. Even though his case was "no papered", a result which leads many defendants to continue with their improper behavior, he immediately took steps to get his life back on the right track. He stopped smoking marijuana, moved back home with his father, and enrolled in a vocational training program so he could become a licensed commercial driver, and try to find employment which would not be prohibited by his medical condition. In February 2005, when he was informed of the indictment in this case, he was well on his way to rehabilitating himself and getting his life back on track. He had enrolled with the Maryland Department of Education, Division of Rehabilitation Services in order to be re-trained for suitable employment. Thereafter, he enrolled in the Maryland Motor Vehicle Administration Commercial Driving Course. He has now completed his training, has his commercial driver's license, and is seeking employment in that field. He has applications pending with Metro and at a number of private companies. He recently took and passed a test required for employment with Metro. He is now scheduled for an interview and road test on January 24th, and is hopeful that he will be offered a job soon thereafter.

Mr. Shedrick has had a very healthy attitude in all his dealings with counsel, and he has been exceedingly responsible in addressing the charges in this case. As the Court may recall, this case came into the system as a grand jury original almost three months after Mr. Shedrick's arrest. He did not get notice of the scheduled arraignment in February 2005. Counsel was appointed and appeared for the arraignment, which had to be re-scheduled. Counsel wrote to Mr. Shedrick, informing him of the indictment in Case No. 05-057, and that the arraignment had been re-

- 4 -

scheduled for March 9, 2005.  Mr. Shedrick promptly contacted counsel, scheduled an

appointment, and met with counsel to discuss the case.  He appeared voluntarily for the

arraignment, and has appeared early for every court hearing since then.  He tested negative for

illicit drugs, and has been in full compliance with his release conditions in the case.

Counsel also notes that Mr Shedrick's consistent efforts to plead guilty and accept

responsibility speak volumes about his rehabilitative efforts, and his commitment not to repeat

past mistakes.  Shortly after the arraignment, undersigned counsel advised the government that

Mr. Shedrick was prepared to plead guilty to the offense of possession with intent to distribute

cocaine base.  That offer was rejected.  Mindful of the Court's admonitions in the case, Mr.

Shedrick made a number of additional attempts to resolve his case, but each time those efforts

were unsuccessful.  Then, after motions were filed more fully flushing out the facts in the case, the

government contacted the defendant, indicating that it had taken a fresh look at the case, and that

they were prepared to resolve the case along the lines previously offered by Mr. Shedrick.  The

government made a plea offer allowing Mr. Shedrick to plead guilty to an information charging

him with possession with intent to distribute cocaine base in violation of  48 D.C. Code 904.01.

Mr. Shedrick promptly accepted the government's offer, and after several scheduling delays he

pleaded guilty to the Information filed in Case No. 05-363.  The government has agreed to

dismiss the charges against Mr. Shedrick in the indictment in Case No. 05-057 in exchange for the

guilty plea, and will move to dismiss those charges at the time of the sentencing.

In short, Mr. Shedrick's arrest had the appropriate effect on him.  He was upset with

himself, and he immediately made positive changes in his life, which is exactly how we hope a

person will react in the criminal justice system - although very few seem to do that.   It seems

evident that he is a good person, with strong family support, good core values, and a strong work

ethic.   Notwithstanding his criminal conduct in late 2004, he has clearly demonstrated over the

past year that, as a first offender, he is deserving of probation in this case.

– 5 –

## OBJECTIONS TO PSR AND VOLUNTARY GUIDELINE CALCULATION:

The defendant has reviewed the PSR.  There are no material objections to the PSR.
Nevertheless, defendant filed an objection to the Probation Department's explanation regarding
the D.C. Code voluntary guideline calculation.  The explanation in the PSR regarding the
applicable "guideline range" is over simplified. It gives the impression that the guideline ranges are
similar or analogous to the Federal Sentencing Guideline ranges, when, in fact, the D.C. Superior
Court guideline ranges are completely different than the Federal Sentencing Guideline ranges, and
have a completely different significance.  Thus counsel has attempted to more fully summarize the
meaning and significance of the guideline box calculated in defendant's case in order to try to
clarify those points, and to demonstrate that most similarly situated defendants receive
probationary sentences.

As the PSR notes, there is no statutory or guideline mandatory minimum in Mr. Shedrick's
case.   He is eligible for a straight probation sentence.  In fact, historically, almost all similarly
situated defendants get probation.  The guideline box indicates that more than 50% of the
defendants who have been sentenced for the same or similar offense received straight probation
sentences.  However, counsel submits that the number would be much higher if you look only at
first offenders who pleaded guilty to small amounts of drugs, because the sentencing guideline
box applicable in defendant's case also includes cases in which the drug quantities were far greater
than in this case, includes defendants with prior convictions, and includes defendants who went to
trial rather than plead guilty. Thus it appears that historically almost all similarly situated
defendants received probation. [1]

---

[1]     It seems reasonable to infer that the few similarly situated defendants who did not get
probation were probably punished for violating conditions of release, going to trial, or for
otherwise demonstrating that they were not reliable - things that Mr. Shedrick has not done.

- 6 -

**18 U.S.C. 3553 (a) FACTORS:**

A probationary sentence is appropriate in light of the sentencing factors enumerated in 18 U.S.C. 3553(a).   Mr. Shedrick is a first offender who had a strong work history until medical problems caused him to stop working.  He has the love and support of his family, even through these difficult times. His offense is a relatively minor offense when compared to most of the offenses prosecuted in this Court and the Superior Court.  It has now been almost 14 months since his arrest, and during that time he has been a model defendant.  He has refrained from illegal drug use and otherwise complied with all release conditions.  He has appeared in court as directed.  He stood before Your Honor and accepted responsibility for his conduct.  He has enrolled and completed employment training.  After nearly three years of being on medical disability, Mr. Shedrick has finally received the necessary training to get work which is not prohibited by his medical condition.  He has job applications pending at Metro and with a number of private companies.  A sentence of imprisonment will significantly set him back with regard to the progress he has made in seeking employment which will not compromise his health.  He has demonstrated that he is a responsible person with the potential to be a law-abiding, contributing member of society.  Thus the nature of the offense and the defendant's history and background favor a probationary sentence in this case. In addition, in light of his progress, it makes no sense for the community to bear the higher costs associated with imprisonment.

Probationary sentences for individuals like Mr. Shedrick play an important role in our criminal justice system.  It is important to send the message of hope and encouragement to people like Mr. Shedrick - one that tells them if they do the right things they will be rewarded with an opportunity to remain in the community on probation.  As noted above, Mr. Shedrick's adjustment and rehabilitative efforts have been extremely positive over the past 14 months.  His early acceptance of responsibility, his ability to refrain from the use of illicit drugs, and his successful efforts to re-train himself for employment, all demonstrate that he has treated his arrest

very seriously.  He has shown proper respect for the law since his arrest, and has shown a healthy fear regarding this criminal prosecution - a respect and fear that many of the defendants in this courthouse do not show.  It is clear that the threat of further criminal sanctions in this case serves as a sufficient deterrent for someone like Mr. Shedrick.

Thus counsel submits that a probationary sentence does not send the wrong message. Simply put, a sentencing scheme such as this one - one which offers probation for first offenders in cases such as this - balances the need for deterrence and the need to encourage people like Mr. Shedrick to make the right choices and positive adjustments.  He has demonstrated that he is a responsible person who can and will make those adjustments in his life without further incarceration.

Finally, counsel submits that  a probationary sentence in Mr. Shedrick's case would provide for a sentence consistent with sentences generally given to similarly situated defendants. As discussed above, almost all similarly situated defendants who are found guilty of this offense receive probationary sentences.  The summary information included in the guidelines tells us that historically first offenders who plead guilty and comply with their court conditions generally receive  probation. Accordingly, a probationary sentence is the appropriate sentence in this case.


**<u>CONCLUSION:</u>**

Mr. Shedrick recognizes that he is responsible for the conduct which brings him before the Court.  Nevertheless, he has accepted responsibility for his mistakes; he has done all the right things to demonstrate that he has taken the matter seriously; and he is a very good candidate for a probationary sentence.  Thus he is hopeful that under all the circumstances in the case, including the factors discussed above, the Court will impose a sentence of probation.

- 8 -

WHEREFORE, for all the reasons outlined above, counsel respectfully urges the Court to sentence Mr. Shedrick to probation, along with any conditions the Court deems appropriate.  In addition, counsel respectfully requests that the Court not impose a fine in this case.  Mr. Shedrick has no present ability to pay a fine, and any additional financial pressures may hinder his rehabilitative efforts and therefore be counterproductive.

Respectfully submitted,


Howard B. Katzoff (Bar # 348292)
601 Indiana Ave, NW Suite 500
Washington, D.C.  20004
(202) 783-6414
Attorney for Richard Shedrick


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing  Memorandum has been served electronically upon Emory Cole, Esquire, Office of the United States Attorney, 555 Fourth Street, N.W., Washington, D.C. 20530  this  20th  day of  January , 2006.

_____
Howard B. Katzoff